IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**HILLARY RING**, Individually and
on behalf of a class of all similarly
situated Florida citizens,

    Plaintiff,                             CASE NO.:

    v.

**DISCOUNT TIRE CO.**,              CLASS REPRESENTATION

    Defendant.
_____/  JURY TRIAL DEMANDED

## CLASS ACTION COMPLAINT

Plaintiff, **HILLARY RING**, individually, and on behalf of a class of all others similarly situated as defined herein, hereby files the following Class Action Complaint against Defendant, **DISCOUNT TIRE CO.** ("DISCOUNT TIRE"), and alleges:

### JURISDICTION, PARTIES, AND VENUE

1.    Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because there is complete diversity between Defendant and at least one member of the class; there are more than one hundred members of the class; and the amount in controversy exceeds $5,000,000 exclusive of interest and costs. This Court also has subject matter jurisdiction under 28 U.S.C. §§ 2201 and 2202 and is authorized to grant declaratory relief under these statutes. All other factual conditions precedent necessary to empower this Court with subject matter and personal jurisdiction have been satisfied.

2.    This is an action for individual and class injunctive relief, declaratory judgment, and for claims for damages.

1

3. Plaintiff at all times material hereto was an adult resident citizen of Leon County, Florida, and is an aggrieved person who brings this class action on behalf of herself, and all others similarly situated, against DISCOUNT TIRE, pursuant to Federal Rules of Civil Procedure 23(b)(2) and (b)(3), to protect the rights of other persons, and to protect the public interest. The allegations and claims below occurred in Leon County, Florida.

4. At all times material to this complaint, DISCOUNT TIRE was a citizen of Arizona conducting business in Leon County, Florida, and in numerous other Florida counties, and was authorized to do business and doing business as a "motor vehicle repair shop" as defined in Florida's Motor Vehicle Repair Act (FMVRA), § 559.903(6), Fla. Stat.

5. DISCOUNT TIRE operates thirty-two (32) motor vehicle repair shops in Florida, which all share the same corporate structure and are operated and controlled congruently.

## **BACKGROUND**

6. This Class Action lawsuit involves violations of FMVRA, pursuant to section 559.901, et seq., Fla. Stat. Specifically, section 559.905 (1), Fla. Stat., requires that DISCOUNT TIRE provide each customer with a written repair estimate stating the estimated cost of the repair work, including the information set forth in section 559.905 (1) (a – n), Fla. Stat, when the customer requests repair work that exceeds $100.00. Pursuant to section 559.905 (2), Fla. Stat., the written repair estimate with the required itemized information must be provided to the customer before the repair work is performed.

7. DISCOUNT TIRE, however, employs a standard practice that fails to provide its customers with written estimates before the work is performed for repairs exceeding $100.00, in violation of section 559.905, Fla. Stat. It is DISCOUNT TIRE's standard and common practice for its sales representatives to confer with each customer, and once the tires are chosen,

DISCOUNT TIRE representatives enter the information into a computer. The total price of the tire installation is provided to the customer, but no written estimate is printed, provided, or signed by DISCOUNT TIRE customers.

8. Instead, DISCOUNT TIRE representatives obtain payment in full of the pending repairs, and direct customers to a waiting area. After the repairs are performed the DISCOUNT TIRE representative calls the customer back to the sales counter, and at that time the representative finally prints the repair invoice. It is DISCOUNT TIRE's standard and common practice to fold the invoice, place it into a DISCOUNT TIRE envelope, and hand it to the customer along with the keys to the customer's vehicle.

9. The DISCOUNT TIRE invoice that is provided to the customer after the work is performed includes the statutorily required written estimate form required by section 559.905, Fla. Stat. However, because the written estimate form was never provided to the customer **prior** to the repairs being performed, as required by the statute, there is no customer signature on the estimate form. This practice is standard for the entire putative class.

10. Further, the DISCOUNT TIRE estimate form contained on the invoice does not include a check mark by the customer for any of the repair estimate options. Section 559.905 (2), Fla. Stat., requires the following:

> If the cost of repair work will exceed $100, the shop shall present to the customer a written notice conspicuously disclosing, in a separate, blocked section, only the following statement, in capital letters of at least 12-point type:
>
> PLEASE READ CAREFULLY, CHECK ONE OF THE STATEMENTS BELOW, AND SIGN:
>
> I UNDERSTAND THAT, UNDER STATE LAW, I AM ENTITLED TO A WRITTEN ESTIMATE IF MY FINAL BILL WILL EXCEED $100.
>
> _____ I REQUEST A WRITTEN ESTIMATE.
>
> _____ I DO NOT REQUEST A WRITTEN ESTIMATE AS LONG AS THE REPAIR COSTS DO NOT EXCEED $_____.

    THE SHOP MAY NOT EXCEED THIS AMOUNT WITHOUT MY WRITTEN OR ORAL APPROVAL.

    \_\_\_\_\_ I DO NOT REQUEST A WRITTEN ESTIMATE.

    SIGNED _____ DATE _____

11. Instead of providing the written estimate to the customer prior to performing the work and obtaining the customer's signature indicating one of the preferences stated above, DISCOUNT TIRE utilizes an electronic disclaimer that states "Signature on file." (See Exhibit 1.) However, no customer signature is on file for the written estimate and the requirements of section 559.905, Fla. Stat. Again, this practice is standard and common to the entire putative class.

12. The harm that occurs to DISCOUNT TIRE customers as a result of the tactic described above is that customers are unable to review the costs being charged, or to make meaningful choices for products that DISCOUNT TIRE regularly adds to the invoices without customer approval. For example, DISCOUNT TIRE added two "Certificates for refund, replacement," (Certificates) at a cost of $21 each, to Plaintiff's invoice. (See Exhibit 1). Plaintiff was completely unaware that an additional charge of $42 was added to her tires purchase. At no time did DISCOUNT TIRE's sales representative notify Plaintiff that these charges were being added, nor was Plaintiff given any opportunity to decline the charges.

13. Upon information and belief, DISCOUNT TIRE adds these undisclosed charges for "Certificates" as a routine practice. Further, DISCOUNT TIRE does not identify or define in any meaningful fashion on the invoice what a "Certificate" actually constitutes on the itemized invoice. Instead, the word "Certificates" is placed in an itemization of various other charges and fees, such as "Environmental Fee," "Waste Tire – Disposal Fee," "Installation & Lifetime Balancing" fees, among others. Thus, customers have no real understanding of what "Certificates"

are, and no meaningful choice to decline or otherwise negotiate the amounts being charged by DISCOUNT TIRE.

14. In fact, "Certificates" are a DISCOUNT TIRE warranty on the tires purchased by its customers.[1] The invoice that DISCOUNT TIRE folds up and inserts into an envelope before giving it to customers is currently a long, narrow document that contains no terms whatsoever that describe what the Certificates provide. Instead, there is simply a note under the itemization for the Certificates stating: "For tire certificate details see www.discounttire.com/customer-service/certificates."

15. During a portion of the class period (defined below), DISCOUNT TIRE used a different invoice form that was several pages. On the third page there was a bordered section titled "CERTIFICATE For Repair, Refund or Replacement." (Exhibit 2.) The terms described in this section provided that "for a fee collected" DISCOUNT TIRE will refund the purchase price of the associated tire "in the event of a failure due to workmanship and materials or a non-reparable road hazard for the service of the original tread down to 3/32 inch remaining, or 3 years from the date of purchase, whichever occurs first."

16. Thus, customers such as Plaintiff are paying a fee of $21 per tire for a simple warranty.[2]

17. Because DISCOUNT TIRE does not provide the written estimate prior to the work being performed, customers are not aware that they are paying $21 or more for the "Certificate" warranty. The purpose of the statutorily required written estimate was stated by a Florida District Court in the seminal case on the subject as follows:

> It was apparently the intent of the legislature to protect consumers against misunderstandings arising from oral estimates of motor vehicle repairs and the legal

---

[1] Although DISCOUNT TIRE refers to the product as a "Certificate," it is clearly, by law, a warranty.
[2] The amount of the Certificate fee is related to the amount each tire costs and varies accordingly.

5

> disputes and litigation that result from the "fait accompli" nature of claims for repair work already done.

*Osteen v. Morris*, 481 So. 2d 1287 (Fla. 5th DCA 1986). Here, DISCOUNT TIRE creates the very misunderstanding the Florida legislature attempted to avoid through implementation of the FMVRA by failing to provide customers like Plaintiff "a clear written estimate given before the repairs are undertaken…." *Id.*

18. Further, virtually every tire manufacturer already includes a warranty on the tires sold by DISCOUNT TIRE, for no additional cost. Thus, DISCOUNT TIRE is charging a Certificate fee for its customers' tires when each tire sold is already warranted by the manufacturer warranty, which is provided at no additional cost to the customer.

19. DISCOUNT TIRE's standard practice of failing to provide its customers a written estimate that clearly sets forth the repairs and costs for other items, such as the certificates, allows DISCOUNT TIRE to add the Certificates to a high percentage of tire sales to its customers.

20. DISCOUNT TIRE routinely adds the cost of its Certificate for each tire purchased to each customer invoice without disclosing this additional cost. If a customer becomes aware of the charge for Certificates and questions or objects to this additional charge, DISCOUNT TIRE employees are trained to overcome the objections. Using these tactics, DISCOUNT TIRE charges an incredibly high percentage of its customers for the Certificates even though the benefit of the Certificate is marginal at best over the free Limited Warranties.

21. If DISCOUNT TIRE provided its customers with a written estimate for all repairs that exceed $100.00 in accordance with Florida law, then customers would have the opportunity to review the additional charges for the Certificates, and other add-on products that DISCOUNT TIRE includes, and the opportunity to object or negotiate these add-on items.

## FACTS SPECIFIC TO THE CLASS REPRESENTATIVE

22. On or about October 27, 2020, Plaintiff visited DISCOUNT TIRE to purchase two new tires for her vehicle. Plaintiff met a DISCOUNT Tire representative and chose the tires to be installed on her vehicle. The DISCOUNT TIRE representative entered Plaintiff's information into a computer and obtained full payment from Plaintiff for the tires prior to the work being performed.

23. At no time did Plaintiff agree to purchase two Certificates from DISCOUNT TIRE in relation to the purchase of the tires. The tires cost $149 each, and DISCOUNT TIRE also charged an "Installation & Life of Tire Maintenance" fee of $22 per tire.

24. DISCOUNT TIRE performed the tire installation requested by Plaintiff and, upon completion, DISCOUNT TIRE summoned Plaintiff to the customer service desk and handed her the keys to her vehicle with a DISCOUNT TIRE envelope that contained the printed repair invoice.

25. At no time prior to the repairs being performed did DISCOUNT TIRE provide Plaintiff a written repair estimate as required by section 559.905, Fla. Stat.

26. At a later date, Plaintiff reviewed the repair invoice that DISCOUNT TIRE had folded and inserted into the envelope. At that time Plaintiff discovered that DISCOUNT TIRE had added two "Certificates" to her invoice, at a cost of $21 each, for a total addition cost of $42. (Exhibit 1.)

27. Plaintiff's repair invoice includes the form required by section 559.905, Fla. Stat., however, DISCOUNT TIRE did not obtain Plaintiff's signature, or complete the form by checking the appropriate box indicating whether Plaintiff requested a written estimate.

## FACTS RELATED TO CLASS ALLEGATIONS

28. On information and belief, DISCOUNT TIRE has engaged in a pattern and practice of violating Florida Statutes on a regular and customary basis. Florida's Legislature enacted Florida's Motor Vehicle Repair Act (FMVRA) with the intent of protecting consumers against

7

misunderstandings arising from oral estimates of motor vehicle repairs and the legal disputes and litigation that result from the "fait accompli" nature of claims for repair work already done. *Osteen v. Morris*, 481 So. 2d 1287 (Fla. 5th DCA 1986).  The FMVRA requires a written estimate for any repairs that exceed $100, however, DISCOUNT TIRE has a standard practice of failing to provide the estimate in a written form prior to performing the repairs.

29. As a result of DISCOUNT TIRE's violation of section 559.905, Fla. Stat., it is able to routinely add a charge for "Certificates" that purport to be a benefit to customers by providing replacement for damaged tires.  Again, DISCOUNT TIRE regularly adds this charge to customers' invoices without disclosing the charge prior to including it on the invoice, and without its customers requesting or accepting the product.

30. DISCOUNT TIRE violates FMVRA, section 559.905, by uniformly failing to provide its customers written estimates for repair work exceeding $100.00, prior to performing the repair work.

## CLASS DEFINITION

31. This lawsuit is brought on behalf of Plaintiff, individually, and all persons in the State of Florida who purchased tires from a Florida DISCOUNT TIRE and paid a repair invoice without being provided a written estimate prior to the work being performed that exceeded $100.00.

32. Excluded from the Class are judicial personnel involved in considering the claims herein, all persons in bankruptcy, Defendant Discount Tire Co., any entities in which Defendant has a controlling interest, and all of Defendant's legal representatives, heirs and successors.

33. This Class period is defined as beginning four (4) years prior to the filing of this action and continuing through the date that the Court orders that notice be issued to the class.

## CLASS ALLEGATIONS

34. Plaintiff and all members of the Class are customers under Fla. Stat. 559.903(1) that the Florida Motor Vehicle Repair Act is intended to protect.

35. The members of the Class are so numerous that joinder of all members is not practical. While the exact number of Class members is unknown to Plaintiff at this time, Plaintiff believes it is in excess of 10,000. Detailed information on the size of the Class can be ascertained through appropriate discovery and from records maintained by DISCOUNT TIRE and its agents.

36. Important to the Plaintiff's class action allegations is the fact that DISCOUNT TIRE uniformly fails to provide written estimates to its customers for repairs that exceed $100, prior to performing the repairs, in violation of section 559.905, Fla. Stat.

37. Plaintiff's class action claims are typical of the Class they seek to represent, as Plaintiff and all other members of the Class sustained actual damages as a result of DISCOUNT TIRE's violation of section 559.905, Fla. Stat. An example of the economic harm that has occurred as a result of this violation is that numerous Florida customers paid for DISCOUNT TIRE's "Certificates" without their knowledge or consent.

38. Plaintiff has no interests adverse to the class and will fairly and adequately protect and represent the interest of each member of the Class.

39. Adequate Representation. Plaintiff has retained the undersigned law firms as counsel in this matter. These firms are experienced in handling class actions involving, among other matters, consumer protection issues. As a result, Plaintiff's attorneys are qualified and experienced in class action litigation and will adequately protect the interests of the class.

40. A class is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all members is impracticable; liability can be proven class-

wide by proving liability against DISCOUNT TIRE for the named Plaintiff; and the large number of potential individual actions would create burdens, expense, and inefficiencies for this Court. Plaintiff foresees no significant difficulties in managing this action as a class action.

41. Absent a class action, the relatively small amount of individual damages at stake for individual actions would be outweighed by the cost of the litigation. Joining these relatively small individual claims is practically speaking the only method by which the putative class members will remedy the wrongs addressed herein.

42. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class.

43. Among the questions of law and fact common to the Class are:

   a) Whether DISCOUNT TIRE violated section 559.905, Fla. Stat., by uniformly failing to provide its customers written estimates for repair work exceeding $100.00, prior to performing the repair work.

   b) Whether DISCOUNT TIRE's practices described above should be declared unlawful by the Court, and whether DISCOUNT TIRE should be enjoined from continuing the practices, pursuant to section 559.921 (1), Fla. Stat.;

   c) Whether DISCOUNT TIRE is required to disgorge to Plaintiff and Class Members all amounts over and above $100 for any repairs performed without a written estimate provided to the customer prior to the repairs being performed; and

   d) Whether Plaintiff and Class Members are entitled to recover court costs and attorney's fees pursuant to section 559.921, Fla. Stat.

44. Pursuant to Fed. R. Civ. P. 23(b)(2), and (b)(3), Plaintiff, individually and on behalf of all similarly situated persons, maintains this class action as a result of DISCOUNT TIRE's

actions or omissions as set forth herein. Those actions or omissions are generally applicable to all the members of the class thereby making final injunctive or declaratory relief concerning the class as a whole appropriate and damages also appropriate in the amount of overcharge paid.

**COUNT I –VIOLATION OF FMVRA**
**PURSUANT TO SECTIONS 559.903, ET SEQ.**

45. Plaintiff re-alleges and incorporates paragraphs 1 through 44 as if expressly set forth herein.

46. Pursuant to Florida Rule of Civil Procedure 1.220(b)(3), DISCOUNT TIRE's acts and omissions, as alleged herein, violate the FMVRA, Fla. Stat. §§ 559.901 *et. seq.* Specifically, DISCOUNT TIRE violated section 559.905, Fla. Stat., which requires that DISCOUNT TIRE provide each customer a written estimate for repairs that exceed $100, prior to the repairs being performed.

47. As set forth above, DISCOUNT TIRE does not provide a written estimate to customers – including Plaintiff – prior to performing the repairs that exceed $100. As described above, this standard practice harms Florida consumers because DISCOUNT TIRE also has a practice of adding unapproved, unauthorized, and unrequested fees to the repair invoice for items such as DISCOUNT TIRE's Certificates. Because DISCOUNT TIRE customers do not receive a written estimate for the customer's signature before the work is performed, the class customers are unable to review, object, or negotiate the complete terms and products included on the invoice.

48. Plaintiff and the Class have suffered actual damages in any amounts that exceed $100 for repairs performed.

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, demands judgment against DISCOUNT TIRE for any and all damages pursuant to section 559.905, Fla. Stat., together with interest both prejudgment and postjudgment, costs and attorney fees pursuant

to Florida Statutes §559.921 (1), Fla. Stat., and such other and further relief as the Court may deem just and proper, and demands trial by jury on all issues triable at law by jury.

### COUNT II - REQUEST FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF PURSUANT TO SECTION 501.211, FLA. STAT.

49. Plaintiff re-alleges and incorporates paragraphs 1 through 43 as if expressly set forth herein.

50. DISCOUNT TIRE violated the FMVRA, Fla. Stat. §§ 559.905 *et. seq,* as described above. Plaintiff and Class Members have been aggrieved by the violations. This is an action for declaratory judgment and injunctive relief pursuant to §559.921(1), Fla. Stat., as follows:

   a) Plaintiff seeks a declaratory judgment that DISCOUNT TIRE's practice of failing to provide a written estimate to customers – including Plaintiff – prior to performing repairs that exceed $100, is unlawful pursuant to § 559.905*,* Fla. Stat.;

   b) Plaintiff seeks injunctive relief requiring DISCOUNT TIRE to comply with section 559.905, Fla. Stat., by providing a written estimate to all customers requesting repairs that exceed $100, prior to performing the repairs, and permitting customers to select the appropriate choice regarding the written estimate.

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, demands declaratory and injunctive judgment against DISCOUNT TIRE as requested above, plus costs and attorney fees pursuant to Florida Statutes §559.921 (1), and such other and further relief as the Court may deem just and proper, and demands trial by jury on all issues triable at law by jury.

Dated:  November 3, 2021.

**COUNSEL FOR PLAINTIFF**

| | |
|---|---|
| */s/ William c. Bielecky* | */s/ J. Matthew Stephens* |
| **WILLIAM C. BIELECKY, P.A.** | **J. Matthew Stephens** |
| WILLIAM C. BIELECKY | Florida Bar No.: 0688649 |
| Florida Bar No.: 0106275 | METHVIN, TERRELL, YANCEY, |
| 400 Capital Circle SE | STEPHENS & MILLER, P.C. |
| Suite 18, Box 300 | 2201 Arlington Avenue South |
| Tallahassee, FL 32301 | Birmingham, Alabama 35205 |
| Telephone: (850) 521-0022 | Telephone: (205) 939-0199 |
| Email: bbielecky@outlook.com | Email: mstephens@mtattorneys.com |

**Defendant can be served at:**

DISCOUNT TIRE CO. C/O REGISTERED AGENT
CORPORATION SERVICE COMPANY
1201 HAYS STREET
TALLAHASSEE, FL 32301

13